[673 NYS2d 681]

CORPORACION NACIONAL DEL COBRE DE CHILE, Appellant, v ENRIQUE P. O. HIRSCH et al., Respondents, et al., Defendants.

First Department, June 9, 1998

**APPEARANCES OF COUNSEL**

*Philip R. Forlenza* of counsel (*Stephen P. Younger* and *Sheryl A. Stoessel* on the brief; *Patterson, Belknap, Webb & Tyler, L. L. P.,* attorneys), for appellant.

*Herbert M. Guston* for respondents.

**OPINION OF THE COURT**

NARDELLI, J.

In this case the IAS Court found that there was enough evidence to justify the attachment of funds deposited in New York accounts. These funds allegedly were kickbacks paid by a London metals broker, Sogemin Metals Limited (Sogemin), to defendant Juan Pablo Davila, the chief futures trader for plaintiff, Corporacion Nacional del Cobre de Chile (Codelco). These payments were made through Sogemin's Chilean representatives, defendants Brokerage Trading and Financial Services (Brokerage Trading), Enrique Patricio Orrego Hirsch (Orrego) and defendant Juan Marcelo Avendano Sabugo (Avendano). The funds, amounting to $2.7 million in accounts in Citibank, N.A., and Donaldson, Lufkin & Jenrette, represent only a portion of the total amount of $9.7 million surreptitiously paid for Codelco's business. Another $2.6 million were frozen in the Cayman Islands and approximately $4 million is "missing." The IAS Court found that there was documentary evidence submitted by the plaintiff to justify the attachment since Codelco showed that it had a substantial likelihood of succeeding in showing that the assets were the product of fraudulent transfers. The propriety of the grant of the attachment order is not seriously disputed by the defendants upon this appeal. However, the IAS Court, in the order appealed from herein, thereafter granted defendants' motion to modify the attachment order to release $100,000 so that defendants could pay counsel. This release of funds was an improvident exercise of discretion by the IAS Court in view of its previous findings, which were fully supported by the record. We therefore reverse the order insofar as it releases funds to defendants.

At first blush, the amount of $100,000 seems a nominal sum compared to the total amounts in issue. However, disbursing attached monies rightfully belonging to the plaintiff to the very people who were allegedly responsible for fraudulently and wrongfully obtaining these monies sets the wrong precedent. The plaintiff is owned by the government of Chile so in a real sense the IAS Court has unjustly imposed the duty to defend the alleged defalcators herein upon the public patrimony of the people of Chile.

The United States Supreme Court has held that there is no constitutional right in criminal cases for a defendant to spend

someone else's money for his defense. "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice. A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended." (*Caplin & Drysdale v United States*, 491 US 617, 626.)

A fortiori, defendants herein do not have a constitutional right to funds to hire counsel in a civil case. However, the issue still remains as to whether the court should exercise its equitable jurisdiction and release frozen funds although the party claiming title has made a strong showing of its likelihood of success in the action.

It would seem logical that when a court makes a finding of a plaintiff's substantial likelihood of showing its legal right to a fund, that the court would thereafter exercise extreme caution before allowing another party to dissipate part of the fund. However, as Oliver Wendell Holmes said, "The life of the law has not been logic: it has been experience" (The Common Law 1 [1881]).

There is a paucity of precedent in the New York case law as to the exercise of discretion in the partial release of attached funds. However, in a civil proceeding involving forfeiture, Justice Sondra Miller, then sitting in the Supreme Court, found that when "hardship, injustice, or defendant's prima facie showing of entitlement to the money has been demonstrated," the court will permit the release of the funds to the defendant to obtain his or her own counsel (*Vergari v Lockhart*, 144 Misc 2d 860, 870). However, in denying the release of funds in that case, the court found that the defendant therein failed to make proper financial disclosure and failed to offer a legitimate derivation for the money (*supra,* at 870).

The Fifth Circuit, in a case involving the release of frozen funds to pay attorneys' fees, held: "In assuring that all of the frozen assets relate to equitable remedies such as restitution and rescission, the district court should allow the defendants to demonstrate any legitimate claim they have to any of the assets that may have been frozen; for example, the defendants may be able to show that certain assets they possess were acquired at a time or through such means that there is no likelihood that they were acquired from the ill-gotten salaries, bonuses, etc. subject to the preliminary injunction. Additionally, as we have noted, the defendants may be entitled to some

reasonable salary. However, as we have stated throughout this opinion, [plaintiff] has made an exceptionally strong case that it is entitled to restitution to the extent alleged in its pleadings; thus, [plaintiff] having made a prima facie case against the defendants, the defendants will bear the burden of showing their entitlement to an exemption of any of the frozen assets, liquid or other." *(Federal Sav. & Loan Ins. Corp. v Dixon*, 835 F2d 554, 565.)

In this case, while the IAS Court found that defendants were in need of funds to retain counsel, it made this finding only on the unsubstantiated and bald assertions of poverty by defendants although defendants failed to account for over $4 million that passed through their bank accounts and is now "missing." Thus, there was no reference by defendants to the disposition of $2.5 million that was transferred by Orrego out of a personal Chase Florida banking account. Moreover, defendants have not been able to contest that these attached monies came from the "kickback" scheme.

The IAS Court was not the only juridical body to find that plaintiff Codelco is likely to succeed in proving that the attached funds are the product of an illicit kickback scheme. The Chilean courts, in indicting Orrego and Frias, noted the foreign accounts opened by Orrego and Frias in finding there was a "money-laundering" operation in which these foreign accounts were used to convert funds into Chilean currency that was shared with Davila and Orrego. The State of Florida and the courts of the Cayman Islands have also issued orders freezing all assets held by defendants on the strong proof presented of an illegal kickback and money-laundering scheme.

Accordingly, the order of Supreme Court, New York County (Herman Cahn, J.), entered July 1, 1997, to the extent that it granted that portion of defendants-respondents' motion seeking to modify the previous attachment order, and released $100,000 from the attached accounts to be used exclusively for attorneys' fees and costs in defending this action, should be reversed, on the law and the facts, without costs or disbursements, and the motion denied.

Ellerin, J. P., Williams and Andrias, JJ., concur.

Order, Supreme Court, New York County, entered July 1, 1997, reversed, on the law and the facts, without costs or disbursements, and the motion of defendants-respondents seeking to vacate, or, in the alternative, modify the attachment order by releasing funds from the attached accounts to be used

exclusively for attorneys' fees and costs in defending this action denied.